1  David Simantob, SBN 155790
   Elizabeth L. Musser, SBN 203512
2  TRESSLER LLP
   1901 Avenue of the Stars, Suite 450
3  Los Angeles, CA 90067
   Telephone: (310) 203-4800
4  Facsimile:  (310) 203-4850
   E-mail: dsimantob@tresslerllp.com
5          emusser@tresslerllp.com

6  Attorneys for Plaintiff
   TWIN CITY FIRE INSURANCE COMPANY

7

8                   **UNITED STATES DISTRICT COURT**

9                  **NORTHERN DISTRICT OF CALIFORNIA**

10

| 11 | TWIN CITY FIRE INSURANCE COMPANY, | **CASE NO. CV 13 2684 JSC** |
|---|---|---|
| 12 | Plaintiff, | Hon. Jacqueline Scott Corley Presiding |
| 13 | v. | |
| 14 | | **TWIN CITY FIRE INSURANCE COMPANY'S COMPLAINT FOR DECLARATORY RELIEF** |
| 15 | PAINE & PARTNERS, LLC (fka FOX PAINE MANAGEMENT III, LLC); FOX PAINE & COMPANY, LLC; W. DEXTER PAINE III; BRIAN BLOCK; AMY GHISLETTA; ROBERT MEYER; KEVIN SCHWARTZ; TROY THACKER; ANGELOS DASSIOS; DARIUS BROOKS; CHRISTOPHER RUETTGERS; MITCHELL S. PRESSER, | **REDACTED** |
| 16 | | |
| 17 | | |
| 18 | | |
| 19 | Defendants. | |

20

21         Plaintiff Twin City Fire Insurance Company ("Twin City"), by and through its

22  undersigned counsel, hereby files its complaint for declaratory relief against defendants Paine &

23  Partners, LLC (formerly known as Fox Paine Management III, LLC) ("Paine & Partners") and

24  Fox Paine & Company, LLC ("FPC"), and former FPC executives W. Dexter Paine III, Brian

25  Block, Amy Ghisletta, Robert Meyer, Kevin Schwartz, Troy Thacker, Angelos Dassios, Darius

26  Brooks, Christopher Ruettgers, and Mitchell S. Presser (collectively, the "Former FPC

27  Executives").  Twin City states as follows:

28

## INTRODUCTION

1.    Plaintiff Twin City brings this action to obtain a declaration that it has no coverage obligations to Paine & Partners, FPC, or the Former FPC Executives (collectively, the "Defendants") under Twin City policy no. DB 0227503-06 or Twin City policy no. DB 0228793-06 (the "Twin City Excess Policies"), issued to FPC, and effective for Claims first made during the period December 30, 2006 to December 30, 2007, in connection with various underlying lawsuits and arbitration demands filed by Saul A. Fox and others against Fox's former business partner W. Dexter Paine III and others.  The Twin City Excess Policies incorporate the terms, conditions, and exclusions of Houston Casualty Company's ("HCC") Private Equity Professional Insurance policy no. H706-60545 (the "HCC Primary Policy").

2.    The dispute between Fox and Paine concerns a business asset licensing agreement (the "Newco Agreement").  The dispute originated when Paine created a new private equity fund and a new company to manage the fund.  Fox declined to participate in the management of the new fund but, pursuant to the Newco Agreement, agreed to allow the new venture to use certain assets of the existing private equity firm, including employees, provided that Paine and the new company did not materially breach the agreement.

3.    That dispute resulted in fifteen lawsuits and arbitration demands (collectively, the "Fox Claims") as follows:

- An action filed on or about August 27, 2007 in the Delaware Court of Chancery, New Castle County: *Fox v. Paine*, Case No. 3187-CC, including an associated writ of mandamus and prohibition and interlocutory appeal (the "*Fox v. Paine* Litigation").

- Two confidential arbitration demands filed on or about May 5, 2009: (1) *Fox Paine & Company v. Ghisletta*, No. 1100058521, JAMS Arbitration San Mateo/San Francisco (the "Ghisletta Arbitration Demand"); and (2) *Fox Paine & Company, LLC v. Thacker*, No. 13 116 Y 01220 09, American Arbitration Association (New York) (the "Thacker Arbitration Demand").

**TWIN CITY FIRE INS. CO.'S COMPL. FOR DECLARATORY RELIEF**

- Eight declaratory judgment actions filed in March 2010 in the Superior Court of California for the County of San Mateo: (1) *Fox Paine Capital Fund II GP, LLC v. Meyer*, Case No. CIV 493186; (2) *Fox Paine Capital Fund II GP, LLC v. Thacker*, Case No. CIV 493161; (3) *Fox Paine Capital Fund II GP, LLC v. Ghisletta*, Case No. CIV 493163; (4) *Fox Paine Capital Fund II GP, LLC v. Schwartz*, Case No. 493162; (5) *Fox Paine Capital Fund II GP, LLC v. Block*, Case No. CIV 493146; (6) *Fox Paine Capital Fund II GP, LLC v. Ruettgers*, Case No. CIV 493187; (7) *Fox Paine Capital Fund II GP, LLC v. Brooks*, Case No. CIV 493145; and (8) *Fox Paine Capital Fund II GP, LLC v. Dassios*, Case No. CIV 493144 (collectively, the "California Actions").

- An action filed on or about February 25, 2012 in the Supreme Court of New York, Nassau County: *Fox Paine Capital Fund II GP, LLC, et al. v. Presser*, Index No. 12-006780 (the "Presser Action").

- An action filed on or about March 20, 2012 in the District Court of Harris County, Texas: *Fox Paine Capital Fund II GP v. Thacker*, Case No. 2012-16622/Court: 055 (the "Texas Action").

- An action filed on or about March 20, 2012 in the Circuit Court of the Eighteenth Judicial Circuit, Chancery Division, Du Page County, Illinois: *Fox Paine Capital Find II GP v. Schwartz*, Case No. 2012CH001338(the "Illinois Action").

- An action filed on or about March 20, 2012 in the Superior Court of California for the County of San Mateo: *Fox Paine Capital Fund II GP v. Meyer*, Case No. CIV 512619 (the "Meyer Action").

4.     As detailed in the Fox Claims, Paine and his new company allegedly breached every material term of the Newco Agreement by raiding employees of the existing private equity firm, allegedly countermanding Fox's decisions regarding management of the existing funds, misallocating expenses incurred in connection with the Newco Agreement, and interfering with Fox's ability to hire new employees.  Fox alleged that those breaches impaired his ability to manage the existing private equity firm and damaged Fox's reputation.

**TWIN CITY FIRE INS. CO.'S COMPL. FOR DECLARATORY RELIEF**

5. ████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
██████████████████████████████████

6.     Fox and Paine are both Insureds under the Twin City Excess Policies.  Twin City denied coverage for the Fox Claims under the Twin City Excess Policies based upon an exclusion known as the "Insured v. Insured" exclusion, which excludes coverage for Claims brought by Insureds against other Insureds, except in certain circumstances, including when the Claim is brought against an Insured for Wrongful Employment Practices, as that term is defined in the HCC Primary Policy.  Twin City determined that because the Fox Claims arise from the underlying business dispute between Fox and Paine, and not from Wrongful Employment Practices, the Insured v. Insured exclusion bars coverage for the Fox Claims.

## PARTIES

7.     Plaintiff Twin City is a corporation organized and existing under the laws of the State of Indiana with its principal place of business in Hartford, Connecticut.

8.     Twin City is informed and believes, and thereon alleges, that at all relevant times, defendant Paine & Partners was and is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business in San Mateo, California.

9.     Twin City is informed and believes, and thereon alleges, that at all relevant times, defendant FPC was and is a limited liability company organized and existing under the laws of the state of Delaware, with its principal place of business in Menlo Park, California.

10.     Twin City is informed and believes, and thereon alleges, that defendant and Former FPC Executive W. Dexter Paine III ("Paine") was the co-founder of FPC, along with Saul A. Fox ("Fox"), and was a director or officer of FPC or its predecessors from 1997 to at least August 1, 2006.  Also on information and belief, Paine is currently the President of Paine & Partners, and resides in San Mateo, California.

11.     Twin City is informed and believes, and thereon alleges, that defendant and Former FPC Executive Amy Ghisletta ("Ghisletta") was a director or officer of FPC from June

**TWIN CITY FIRE INS. CO.'S COMPL. FOR DECLARATORY RELIEF**

2003 to at least August 1, 2006.  Also on information and belief, Ghisletta is currently the Chief Financial Officer of Paine & Partners, and resides in Orinda, California.

12.   Twin City is informed and believes, and thereon alleges, that defendant and Former FPC Executive Brian Block ("Block") was a director or officer of FPC from August 2003 to at least August 1, 2006.  Also on information and belief, Block is currently a director of Paine & Partners, and resides in New York, New York.

13.   Twin City is informed and believes, and thereon alleges, that defendant and Former FPC Executive Robert Meyer ("Meyer") was a director or officer of FPC from November 2005 to at least August 1, 2006.  Also on information and belief, Meyer is currently the Vice President of Finance or Chief Financial Officer of Paine & Partners, and resides in Palo Alto, California.

14.   Twin City is informed and believes, and thereon alleges, that defendant and Former FPC Executive Kevin Schwartz ("Schwartz") was a director or officer of FPC from January 2002 to at least April 3, 2006.  Also on information and belief, Schwartz is currently a partner at Paine & Partners, and resides in Hinsdale, Illinois.

15.   Twin City is informed and believes, and thereon alleges, that defendant and Former FPC Executive Troy Thacker ("Thacker") was a director or officer of FPC from August 2001 to at least April 3, 2006.  Also on information and belief, Thacker is currently a director of Paine & Partners, and resides in Woodside, California.

16.   Twin City is informed and believes, and thereon alleges, that defendant and Former FPC Executive Angelos Dassios ("Dassios") was a director or officer of FPC from May 2002 to 2004, and again from May 2006 to at least August 1, 2006.  Also on information and belief, Dassios is currently a director of Paine & Partners, and resides in San Mateo, California.

17.   Twin City is informed and believes, and thereon alleges, that defendant and Former FPC Executive Darius Brooks ("Brooks") was a director or officer of FPC from June 2003 to at least August 31, 2005.  Also on information and belief, Brooks resides in San Francisco, California.

**TWIN CITY FIRE INS. CO.'S COMPL. FOR DECLARATORY RELIEF**

18.     Twin City is informed and believes, and thereon alleges, that defendant and Former FPC Executive Christopher Ruettgers ("Ruettgers") was a director or officer of FPC from January 2002 to at least August 1, 2006.  Also on information and belief, Ruettgers is currently a director of Paine & Partners, and resides in New York, New York.

19.     Twin City is informed and believes, and thereon alleges, that Former FPC Executive Mitchell S. Presser ("Presser") was a director or officer of FPC.  Also on information and belief, Presser is currently a director of Paine & Partners, and resides in New York, New York.

**JURISDICTION**

20.     Twin City files this action in the United States District Court for the Northern District of California on the basis of diversity of citizenship.

21.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1), because there is complete diversity between plaintiff Twin City, on the one hand, and Defendants, on the other hand, and the amount in controversy exceeds $75,000, exclusive of interest and costs.  As set forth below, there is an actual controversy between the parties.

22.     Twin City is informed and believes and thereon alleges that defendants are subject to personal jurisdiction in the State of California because, among other things, they are citizens of the State of California and/or conduct substantial, continuous, and systematic business within California, contract to transact business or engage in conduct within California that they know or should reasonably expect would have consequences in California, and derive substantial revenue from interstate commerce.

23.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(a)(2) and (3) because this is a civil action in which the subject matter jurisdiction is founded only on diversity of citizenship and is brought in a judicial district in which each of the defendants is subject to personal jurisdiction.

**TWIN CITY FIRE INS. CO.'S COMPL. FOR DECLARATORY RELIEF**

**THE UNDERLYING ACTIONS**

**Background**

24.     On information and belief, FPC is a private equity firm co-founded in 1997 by Fox and Paine.

25.     On information and belief, FPC initially consisted of two funds: Fox Paine Capital, L.P. ("Fund I") and Fox Paine Capital II, L.P. ("Fund II").

26.     On information and belief, Fox served as FPC's Chief Executive Officer and Paine served as FPC's President.

27.     On information and belief, in late 2005, Paine initiated plans to create a new private equity fund and a new company to manage it.  Paine asked Fox to be the Chief Executive Officer of the new management company.  Based on allegations set forth in the Fox Claims, Fox did not wish to participate in the management of the new fund with Paine, choosing to focus on FPC's existing private equity fund management responsibilities.  However, Fox agreed to allow Paine to use certain assets of FPC in managing the new venture.

28.     On information and belief, in early 2006 Fox and Paine entered into the Newco Agreement, which granted Paine's new venture, Fox Paine Management III ("FPM III"), a conditional license to use certain FPC assets including, the FPC name, FPC's track record, databases, intellectual property, information technology, computers, infrastructure, investor relationships, offices, and the non-exclusive and limited services of certain FPC executive and professional employees, in connection with the management of Paine's new equity fund, Fox Paine Capital Fund III, L.P. ("Fund III").

29.     On information and belief, the Newco Agreement provided that Paine's license to use FPC's assets would terminate upon any material breach of the Newco Agreement by Paine or FPM III.

30.     The Fox Claims all arise from a dispute between former business partners Fox and Paine concerning Paine and FPM III's alleged breaches of the Newco Agreement.  Specifically, the Fox Claims allege that: (1) Paine and FPM III engaged in the raiding of FPC Employees in material breach of the Newco Agreement by having the Former FPC Executives

**TWIN CITY FIRE INS. CO.'S COMPL. FOR DECLARATORY RELIEF**

"terminate" their employment with FPC and "terminating" the employment of other FPC employees; (2) Paine and FPM III interfered with Fox's management of Fund II by attempting to sell assets of Fund II in contravention of Fox's wishes; (3) Paine and FPM III interfered with Fox's attempts to replace FPC's Chief Financial Officer stolen by FPM III; and (4) Paine and FPM III misallocated costs between FPC and FPM III.

31.     Further, the Fox Claims allege that after the Former FPC Executives' employment with FPC ended, the Former FPC Executives wrongfully sought to participate in post employment investments and wrongfully transferred interests in FPC and Fund II to Paine.

32.     On information and belief, the Fox Claims all seek damages related to the business dispute between Fox and Paine, including damages for corporate raiding, breach of fiduciary duties, and breach of the Newco Agreement.

**The _Fox v. Paine_ Litigation**

33.     On or around August 27, 2007, plaintiffs Fox, Mercury Assets, LLC ("Mercury Assets"), and Mercury Trust ("Mercury Trust"), on their own behalf and derivatively on behalf of FPC, filed the complaint initiating the _Fox v. Paine_ Litigation against Paine, The Paine Family Trust, FPM III, and nominally FPC.  On information and belief, Mercury Assets and Mercury Trust are entities controlled by Fox.

34.     The plaintiffs to the _Fox v. Paine_ Litigation allege that in breach of the Newco Agreement, Paine "raided and deprived" FPC of its Chief Financial Officer and professional employees and "interfered with and attempted to frustrate" Fox's efforts to hire a new Chief Financial Officer.  Additionally, the plaintiffs allege that Paine and FPC interfered with Fox's management of Fund II, seriously impairing Fox's ability to carry out his duties as Chief Executive Officer of FPC and tarnishing Fox's name and reputation in his business.

35.     On information and belief, the _Fox v. Paine_ Litigation settled in December 2007, as memorialized in a December 2007 settlement agreement (the "_Fox v. Paine_ Settlement Agreement").  Following Fox's failure to make certain outstanding employee incentive compensation payments pursuant to the _Fox v. Paine_ Settlement Agreement, Paine and other

**TWIN CITY FIRE INS. CO.'S COMPL. FOR DECLARATORY RELIEF**

1    defendants to the *Fox v. Paine* Litigation filed a motion to enforce the *Fox v. Paine* Settlement

2    Agreement in August 2008.

3            36.     Fox and other plaintiffs to the *Fox v. Paine* Litigation filed a petition for writ of

4    mandamus and prohibition to the Delaware Supreme Court, *In the Matter of the Petition of Saul*

5    *Fox, et al.*, No. 260, 2010 (denied on May 28, 2010), and an interlocutory appeal to the Delaware

6    Supreme Court, *Fox v. Paine*, No. 259, 2010 (denied on May 28, 2010).  These petitions and

7    appeals are expressly included as part of the *Fox v. Paine* Litigation as that term is defined

8    herein.

9            37.     On August 13, 2012, a stipulation of dismissal with prejudice of all claims and

10   counterclaims in the *Fox v. Paine* Litigation was filed.

11           38.     A true and correct copy of the complaint initiating the *Fox v. Paine* Litigation is

12   attached hereto as Exhibit "A."

13           **The Ghisletta Arbitration Demand**

14           39.     On or around May 5, 2009, claimants FPC, Mercury Assets, Mercury Trust, and

15   Fox filed a confidential arbitration demand against respondents Ghisletta, Meyer, Schwartz, and

16   Block, initiating the Ghisletta Arbitration Demand.

17           40.     █████████████████████████████████████████

18   ███████████████████████████████████████████████████████

19   ███████████████████████████████████████████████████████

20   ███████████████████████████

21           41.     █████████████████████████████████████████

22   ███████████████████████████████████████████████████████

23   ███████████████████████████████████████████████████████

24   ███████████████████████████████████████████████████████

25   ███████████████████████████████████████████████████████

26   █████████████████████████

27

28

9

**TWIN CITY FIRE INS. CO.'S COMPL. FOR DECLARATORY RELIEF**

**The Thacker Arbitration Demand**

42.    On or around May 5, 2009, claimants FPC, Mercury Assets, Mercury Trust, and Fox filed a confidential arbitration demand against respondent Thacker, initiating the Thacker Arbitration Demand.

43.    ████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
█████████████████████████

44.    ████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████

**The California Actions**

45.    In or around March 2010, plaintiffs Fox Paine Capital Fund II GP, LLC, Fox Paine Capital Management II, Fox Paine Capital International GP, L.P., Fox Paine International GP, Ltd., FP International LPH, L.P., LPH International LPH GP, Ltd., LLC, and FPC (collectively, the "Fox Plaintiffs") filed eight separate complaints initiating the California Actions against Former FPC Executives Block, Ghisletta, Meyer, Schwartz, Dassios, Brooks, Ruettgers, and Thacker.

46.    On information and belief, the Fox Plaintiffs are all companies owned and/or controlled by Fox.

47.    In the California Actions, the Fox Plaintiffs seek a declaration that the defendants have no right to participate in, or to share in profits from investments made by Fund II after they left FPC, which, at the very latest, was 2007.

48.    On information and belief, prosecution of the California Actions has been enjoined pending resolution of a pending motion and cross-motion in the *Fox v. Paine* Litigation.

**TWIN CITY FIRE INS. CO.'S COMPL. FOR DECLARATORY RELIEF**

49.     True and correct copies of the complaints initiating the California Actions are attached hereto as Exhibits "B" through "I," inclusive.

**The Presser Action**

50.     On or around February 25, 2012, the Fox Plaintiffs filed the Presser Action against Former FPC Executive Presser, alleging that Presser intentionally interfered with agreements governing certain partnership interests in Fund II held by Former FPC Executives' and aided and abetted other Former FPC Executives' in breaching those agreements, damaging the Fox Plaintiffs.

51.     A true and correct copy of the complaint initiating the Presser Action is attached hereto as Exhibit "J."

**The Texas Action**

52.     On or around March 20, 2012, the Fox Plaintiffs filed the Texas Action against Former FPC Executive Thacker, alleging that Thacker wrongfully transferred partnership interests from the Fox Plaintiffs' ongoing fund to Paine and The Paine Family Trust, causing "irreparable harm" to the Fox Plaintiffs.

53.     A true and correct copy of the complaint initiating the Texas Action is attached hereto as Exhibit "K."

**The Illinois Action**

54.     On or around March 20, 2012, the Fox Plaintiffs filed the Illinois Action against Former FPC Executive Schwartz, alleging that Schwartz wrongfully transferred partnership interests from the Fox Plaintiffs' ongoing fund to Paine and The Paine Family Trust, causing "irreparable harm" to the Fox Plaintiffs.

55.     A true and correct copy of the complaint initiating the Illinois Action is attached hereto as Exhibit "L."

**The Meyer Action**

56.     On or around March 20, 2012, the Fox Plaintiffs filed the Meyer Action against Former FPC Executive Meyer, alleging that Meyer wrongfully transferred partnership interests

**TWIN CITY FIRE INS. CO.'S COMPL. FOR DECLARATORY RELIEF**

1   from the Fox Plaintiffs' ongoing fund to Paine and The Paine Family Trust, causing "irreparable

2   harm" to the Fox Plaintiffs.

3       57.    A true and correct copy of the complaint initiating the Meyer Action is attached

4   hereto as Exhibit "M."

5   **The Settlement**

6       58.    ████████████████████████████████████████████████

7   ████████████████████████████████████████████████████████████

8   ████████████████████████████████████████████████████████████

9   ████████████████████████████████████████████████████████████

10  ████████████████████████████████████████████████████████████

11  ████████████████████████

12  **TWIN CITY EXCESS POLICIES**

13      59.    Twin City policy no. DB 0227503-06, effective December 30, 2006 to December

14  30, 2007 (the "Twin City First Layer Excess Policy"), is an excess policy issued to FPC that

15  provides a limit of liability of $10 million excess of $10 million in underlying limits of liability

16  provided by primary carrier HCC under the HCC Primary Policy, effective December 30, 2006

17  to December 30, 2007, extended to January 2, 2008.   A true and correct copy of the HCC

18  Primary Policy is attached as Exhibit "N."  A true and correct copy of the Twin City First Layer

19  Excess Policy is attached hereto as Exhibit "O."

20      60.    Twin City policy no. DB 0228793-06, effective December 30, 2006 to December

21  30, 2007 (the "Twin City Third Layer Excess Policy"), is an excess policy issued to FPC that

22  provides a limit of liability of $10 million excess of $30 million in underlying limits of liability,

23  as follows:

24          (1)    the $10 million HCC Primary Policy;

25          (2)    the $10 million Twin City First Layer Excess Policy; and

26          (3)    a $10 million second layer excess policy issued by St. Paul Travelers

27                 Excess Policy No. 594CM1797 (the "Travelers Excess Policy").

28

---

12

**TWIN CITY FIRE INS. CO.'S COMPL. FOR DECLARATORY RELIEF**

A true and correct copy of the Twin City Third Layer Excess Policy is attached hereto as Exhibit "P."

61.     The Twin City First Layer Excess Policy and the Twin City Third Layer Excess Policy are referred to collectively as the "Twin City Excess Policies."

62.     The Twin City Excess Policies incorporate by reference the terms, conditions, and exclusions in the primary policy issued by HCC Primary Policy.  The Twin City First Layer Excess Policy will pay loss only after satisfaction of a $250,000 retention, and after the HCC Primary Policy is exhausted.  The Twin City Third Layer Excess Policy will pay loss only after satisfaction of a $250,000 retention, and after the HCC Primary Policy, the Twin City First Layer Excess Policy, and the Travelers Excess Policy are exhausted.

63.     Under Coverage A, the HCC Primary Policy provides: "The Insurer shall pay on behalf of the **Insureds Loss** arising from a **Wrongful Act** in the performance of **Private Equity Activities**."

64.     Section IV.I. of the HCC Primary Policy, as amended by Endorsement No. 14, provides in relevant part:

> The Insurer shall not be liable to make any payment in connection with any **Claim**:
>
> I.      by or on behalf of any **Insured** in any capacity except: …
>
> (3)     is brought by one or more of the **Insured Persons** for **Wrongful Employment Practices**[.]

(the "Insured v. Insured Exclusion").

65.     Section VII. of the HCC Primary Policy provides in relevant part:

> If both **Loss** covered under this Policy and **Loss** not covered by this Policy are incurred in connection with any **Claim**, the **Insured Person(s)**, the **Insured Organization** and the Insurer shall use all reasonable efforts to agree upon a fair and proper allocation of such amount between covered **Loss** and uncovered **Loss**.

66.     The HCC Primary Policy contains the following pertinent Definitions:

- **Claim** means: …

**TWIN CITY FIRE INS. CO.'S COMPL. FOR DECLARATORY RELIEF**

(2)     any civil, judicial, administrative, regulatory or arbitration proceeding (including any appeal therefrom) initiated against any of the **Insureds**, including any administrative or regulatory investigation commenced by a formal order of investigation; …

- **Costs, Charges and Expenses** means reasonable and necessary legal fees and expenses (including expert fees) and cost of attachment or similar bonds incurred by the **Insureds** in defense of any **Claim** …

- **Insureds** includes **Insured Persons**.

- **Insured Organization** means:

    (1)     the entity listed in Item A. of the Declarations of this Policy; …

- **Insured Persons** means … a natural person who was, is, or shall become a duly appointed or elected director, officer, general partner, manager, debtor in possession or employee of the **Insured Organization** …

- **Interrelated Wrongful Acts** means **Wrongful Acts** which have as a common nexus any fact, circumstance, situation, event, transaction or series of facts, circumstances, situations, events or transactions.

- **Loss** means damages, settlements, and **Costs, Charges and Expenses** incurred by any of the **Insureds** ….   **Loss** shall not include: … (3) matters deemed uninsurable under the law pursuant to which this Policy shall be construed ….

- **Portfolio Company** means any corporation, partnership, limited liability company or other type of organization in which the **Insured Organization** maintains, maintained or proposes to maintain pursuant to a letter of intent, an equity or debt investment and/or board representation or board advisor or board observer status, but solely in connection with **Private Equity Activities** by the **Insured Organization**.

- **Private Equity Activities** means (1) services as a director, officer, board representative, partner, managing member or trustee of any current or former **Portfolio Company**; or (2) the investment in, formation, capitalization or

14

disposition of, or rendering of management. Consulting, advisory or other services to a **Portfolio Company** by the **Insureds**; or (3) the creation, distribution, sale of securities in, or the management or administration of a private equity fund; or (4) the providing of consulting services by the **Insureds** to other third parties pursuant to a fee-based oral or written agreement for such activities and any activities preparatory to the activities described in this paragraph

- **Wrongful Act** means:

  (1)    with respect to Insuring Agreement Coverage A, any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act by the **Insured Organization** or the **Insured Persons** in the scope of **Private Equity Activities**; …

- **Wrongful Employment Practices** means any actual or alleged:

  (1)    **Discrimination**;

  (2)    **Harassment**;

  (3)    termination, actual or constructive, of an employment relationship in any manner which is allegedly against the law and wrongful;

  (4)    allegations of wrongful demotion, retaliation, misrepresentation, promissory estoppel and intentional interference with contract, which arise from an employment relationship;

  (5)    libel, slander, defamation, infliction of emotional distress or mental anguish, humiliation, false imprisonment, invasion of privacy and other personal injury allegations which arise from the employment relationship;

  (6)    allegations of breach of an implied employment contract and breach of the covenant of good faith and fair dealing in the employment contract;

  (7)    employment terminations, disciplinary actions, demotions or other employment decisions which violate public Policy or the Family Medical Leave Act or similar state law;

**TWIN CITY FIRE INS. CO.'S COMPL. FOR DECLARATORY RELIEF**

(8)  violations of the Uniformed Services Employment and Reemployment Rights Act;

(9)  allegations of breach of an employee's federal; state or local civil rights including, but not limited to, any violations of the Civil Rights Act of 1866 or 42 U.S.C Section 1983;

(10)  allegations of retaliation against an **Insured** including, but not limited to, retaliation for filing claims under the Federal False Claims Act, retaliation in connection with whistleblowing, retaliation for union activities or in connection with strikes or lockouts;

(11)  allegations of wrongful deprivation of career opportunity or failure to grant tenure; and

(12)  **Negligent Hiring**.

## TENDER TO TWIN CITY

67.  Twin City received notice of the *Fox v. Paine* Litigation on or about November 7, 2007 from broker Equity Risk Partners, Inc. ("Equity Risk").

68.  Twin City acknowledged receipt of the *Fox v. Paine* Litigation on or about November 15, 2007.

69.  On or about January 31, 2008, Equity Risk advised that the *Fox v. Paine* Litigation had been dismissed, and Twin City closed its file.

70.  On or about May 15, 2009, Equity Risk provided notice of the Ghisletta Arbitration Demand and the Thacker Arbitration Demand to Twin City, among other insurers.

71.  On or about June 22, 2009, Twin City acknowledged receipt of the Ghisletta Arbitration Demand and the Thacker Arbitration Demand.

72.  On or about July 7, 2009, Presser advised Twin City that the *Fox v. Paine* Litigation was not resolved.

73.  HCC and Twin City assert that the Fox Claims all allege **Interrelated Wrongful Acts**, as that term is defined in the HCC Primary Policy, and, pursuant to Section V.D. of the

HCC Primary Policy, are treating those matters as a single **Claim** deemed to have been made on August 27, 2007, the date the *Fox v. Paine* Litigation was filed.

74.     On or about September 4, 2009, HCC denied coverage for the *Fox v. Paine* Litigation, based on the HCC Primary Policy's Insured v. Insured Exclusion.  Specifically, HCC advised that the Insured v. Insured Exclusion applied to exclude coverage because the *Fox v. Paine* Litigation is a Claim brought by Fox, an Insured Person, against other Insureds, Paine, FPM III, and FPC.  Further, HCC advised that the Wrongful Employment Practices exception to the Insured v. Insured Exclusion did not apply because the *Fox v. Paine* Litigation concerned a partnership dispute between Fox and Paine over the Newco Agreement and does not arise out of an employment relationship between Fox and Paine.

75.     On or about October 22, 2009, HCC denied coverage for the Ghisletta Arbitration Demand and the Thacker Arbitration Demand, based on the HCC Primary Policy's Insured v. Insured Exclusion.  Specifically, HCC advised that the Insured v. Insured Exclusion applied to exclude coverage because the Ghisletta Arbitration Demand and the Thacker Arbitration Demand are Claims brought by Fox, an Insured Person, against other certain Former FPC Executives, who are Insureds.

76.     On or about February 23, 2010, HCC retracted its denial of coverage for the Ghisletta Arbitration Demand and the Thacker Arbitration Demand, and agreed to accept coverage for those matters, subject to a reservation of rights, including the right to assert that the Insured v. Insured Exclusion precludes coverage for the Ghisletta Arbitration Demand and the Thacker Arbitration Demand.

77.     ███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

**TWIN CITY FIRE INS. CO.'S COMPL. FOR DECLARATORY RELIEF**

1

2

3

4

5

6         78.    On or about May 8, 2012, Twin City denied coverage for the Texas Action,

7 Illinois Action and Meyer Action, based on the HCC Primary Policy's Insured v. Insured

8 Exclusion.

9         79.    Following a September 14, 2012 meeting between counsel for the Former FPC

10 Executives and Twin City, the Former FPC Executives sought coverage for the Settlement and

11 legal fees incurred in connection with the Fox Claims.

12         80.    On November 19, 2012, Twin City issued a supplemental letter to the defendants

13 reiterating its denial of coverage for all of the Fox Claims, based on the HCC Primary Policy's

14 Insured v. Insured Exclusion.  Specifically, Twin City advised that the allegations in the Fox

15 Claims are that Paine and FPM III engaged in the raiding of the Former FPC Executives in

16 breach of the Newco Agreement and allowing the Former FPC Executives to interfere with and

17 impair the ability of FPC to maintain and run its business, thereby damaging Fox and FPC.

18         81.    In the November 19, 2012 letter, Twin City advised that employee raiding

19 allegations clearly arise from the partnership dispute between Fox and Paine and, under

20 California law, the fact that the Former FPC Executives allegedly "terminated" their employment

21 with FPC does not make those allegations a Wrongful Employment Practice under subpart (3) of

22 the definition ("termination, actual, or constructive, of an employment relationship in any

23 manner which is allegedly against the law and wrongful") because Fox does not seek to recover

24 for wrongful termination and is not required to prove wrongful termination to establish the

25 Defendants' liability.

26         82.    In the November 19, 2012 letter, Twin City also advised that the Insureds' broad

27 interpretation of subpart (4) of the Wrongful Employment Practices definition ("allegations of . .

28 . interference with contract, which arise from an employment relationship") is not supported by

**TWIN CITY FIRE INS. CO.'S COMPL. FOR DECLARATORY RELIEF**

1    California law and thus, any alleged "interference" with the Newco Agreement does not "arise

2    from" an "employment relationship."

3         83.    In the November 19, 2012 letter, Twin City advised that even if coverage for the

4    Fox Claims was not excluded pursuant to the Insured v. Insured Exclusion, the Twin City Excess

5    Policies provide no coverage for legal fees incurred in the Fox Claims prior to Twin City being

6    on notice of a Claim.    Twin City also advised that the Twin City Excess Policies provide no

7    coverage for the Settlement to the extent it represents uninsurable disgorgement, which does not

8    constitute Loss, as that term is defined in the HCC Primary Policy.  Lastly, Twin City advised

9    that even if coverage did exists for the Fox Claims, or any of them, the Settlement and legal fees

10   must be allocated between covered Loss and uncovered Loss.

### FIRST CAUSE OF ACTION

(For Declaratory Relief with Respect to Coverage of the *Fox v. Paine* Litigation)

13        84.    Twin City hereby incorporates and re-alleges the allegations in Paragraphs 1-83

14   as if fully set forth herein.

15        85.    There exists a genuine and bona fide dispute, and an actual controversy and

16   disagreement between Twin City, on the one hand, and Defendants, on the other hand, about

17   whether Twin City has a duty to provide coverage in connection with the *Fox v. Paine* Litigation.

18        86.    Twin City contends that coverage for the *Fox v. Paine* Litigation is excluded

19   under the Twin City Excess Policies based on the Insured v. Insured Exclusion in the HCC

20   Primary Policy, to which the Twin City Excess Policies follow form.

21        87.    Defendants, or certain of them, contend that coverage is available for the *Fox v.*

22   *Paine* Litigation under the Twin City Excess Policies.

23        88.    Twin City requests a judicial declaration that it is not obligated to provide

24   coverage to defendants, or any of them, with respect to any defense fees and costs incurred in the

25   *Fox v. Paine* Litigation, or with respect to any judgment entered or settlement reached in the *Fox*

26   *v. Paine* Litigation.

27

28

**TWIN CITY FIRE INS. CO.'S COMPL. FOR DECLARATORY RELIEF**

## SECOND CAUSE OF ACTION

(For Declaratory Relief with Respect to the Duty to Reimburse Defense Expenses Incurred in the *Fox v. Paine* Litigation from January 31, 2008 to July 7, 2009)

89.     Twin City hereby incorporates and re-alleges the allegations in Paragraphs 1-88 as if fully set forth herein.

90.     On or about January 31, 2008, Equity Risk advised that the *Fox v. Paine* Litigation had been dismissed.  On or about July 7, 2009, Presser advised Twin City that the *Fox v. Paine* Litigation was never settled, and in fact was still pending.

91.     Twin City contends that to the extent coverage otherwise exists for the *Fox v. Paine* Litigation under the Twin City Excess Policies, or either of them, it has no duty to reimburse defense expenses incurred in the *Fox v. Paine* Litigation from January 31, 2008 to July 7, 2009.

92.     Defendants, or certain of them, contend that Twin City has a duty to reimburse defense expenses incurred in the *Fox v. Paine* Litigation under the Twin City Excess Policies during the January 31, 2008 to July 7, 2009 timeframe.

93.     There exists a genuine and bona fide dispute, and an actual controversy and disagreement between Twin City, on the one hand, and Defendants, on the other hand, about whether, to the extent coverage otherwise exists for the *Fox v. Paine* Litigation under the Twin City Excess Policies, Twin City has a duty to reimburse defense expenses incurred in the *Fox v. Paine* Litigation from January 31, 2008 to July 7, 2009.

94.     Twin City requests a judicial declaration that it is not obligated to reimburse defendants, or any of them, for the defense expenses incurred in the *Fox v. Paine* Litigation from January 31, 2008 to July 7, 2009 under the Twin City Excess Policies, or either of them.

## THIRD CAUSE OF ACTION

(For Declaratory Relief with Respect to the Duty to Reimburse Legal Fees Incurred in Connection with Enforcement of the *Fox v. Paine* Settlement Agreement

95.     Twin City hereby incorporates and re-alleges the allegations in Paragraphs 1-94 as if fully set forth herein.

**TWIN CITY FIRE INS. CO.'S COMPL. FOR DECLARATORY RELIEF**

96.     The *Fox v. Paine* Litigation was settled in December 2007, pursuant to the terms of the *Fox v. Paine* Settlement Agreement.  Following Fox's failure to make certain outstanding employee incentive compensation payments pursuant to the *Fox v. Paine* Settlement Agreement, Paine and other defendants to the *Fox v. Paine* Litigation filed a motion to enforce the *Fox v. Paine* Settlement Agreement in August 2008.

97.     Twin City contends that to the extent coverage otherwise exists for the *Fox v. Paine* Litigation under the Twin City Excess Policies, or either of them, it has no duty to reimburse legal fees or expenses incurred in connection with any motion to enforce the *Fox v. Paine* Settlement Agreement, or any other related motions or proceedings that constitute Paine's and the other defendants' pursuit of affirmative claims asserted in the *Fox v. Paine* Litigation.

98.     Defendants, or certain of them, contend that Twin City has a duty to reimburse legal fees and expenses incurred in the *Fox v. Paine* Litigation under the Twin City Excess Policies in connection with Paine's and the other defendants' motion to enforce the *Fox v. Paine* Settlement Agreement, and in the pursuit of other affirmative claims asserted by Paine and the other defendants in the *Fox v. Paine* Litigation.

99.     There exists a genuine and bona fide dispute, and an actual controversy and disagreement between Twin City, on the one hand, and Defendants, on the other hand, about whether, to the extent coverage otherwise exists for the *Fox v. Paine* Litigation under the Twin City Excess Policies, Twin City has a duty to reimburse legal fees incurred in connection with Paine's and the other defendants' motion to enforce the *Fox v. Paine* Settlement Agreement, or otherwise incurred in the pursuit of affirmative claims asserted by Paine and the other defendants in the *Fox v. Paine* Litigation.

100.    Twin City requests a judicial declaration that it is not obligated to reimburse Defendants, or any of them, for the legal fees incurred in the *Fox v. Paine* Litigation in connection with Paine's and the other defendants' motion to enforce the *Fox v. Paine* Settlement Agreement, or otherwise incurred in the pursuit of affirmative claims asserted by Paine and the other defendants under the Twin City Excess Policies, or either of them.

**TWIN CITY FIRE INS. CO.'S COMPL. FOR DECLARATORY RELIEF**

**FOURTH CAUSE OF ACTION**

(For Declaratory Relief with Respect to Coverage of the Ghisletta Arbitration Demand)

101.    Twin City hereby incorporates and re-alleges the allegations in Paragraphs 1-100 as if fully set forth herein.

102.    There exists a genuine and bona fide dispute, and an actual controversy and disagreement between Twin City, on the one hand, and Defendants, on the other hand, about whether Twin City has a duty to provide coverage in connection with the Ghisletta Arbitration Demand.

103.    Twin City contends that coverage for the Ghisletta Arbitration Demand is excluded under the Twin City Excess Policies based on the Insured v. Insured Exclusion in the HCC Primary Policy, to which the Twin City Excess Policies follow form.

104.    Defendants, or certain of them, contend that coverage is available for the Ghisletta Arbitration Demand under the Twin City Excess Policies.

105.    Twin City requests a judicial declaration that it is not obligated to provide coverage to Defendants, or any of them, with respect to any defense fees and costs incurred in connection with the Ghisletta Arbitration Demand, or with respect to any award entered or settlement reached in connection with the Ghisletta Arbitration Demand.

**FIFTH CAUSE OF ACTION**

(For Declaratory Relief with Respect to Coverage of the Thacker Arbitration Demand)

106.    Twin City hereby incorporates and re-alleges the allegations in Paragraphs 1-105 as if fully set forth herein.

107.    There exists a genuine and bona fide dispute, and an actual controversy and disagreement between Twin City, on the one hand, and Defendants, on the other hand, about whether Twin City has a duty to provide coverage in connection with the Thacker Arbitration Demand.

108.    Twin City contends that coverage for the Thacker Arbitration Demand is excluded under the Twin City Excess Policies based on the Insured v. Insured Exclusion in the HCC Primary Policy, to which the Twin City Excess Policies follow form.

**TWIN CITY FIRE INS. CO.'S COMPL. FOR DECLARATORY RELIEF**

109.    Defendants, or certain of them, contend that coverage is available for the Thacker Arbitration Demand under the Twin City Excess Policies.

110.    Twin City requests a judicial declaration that it is not obligated to provide coverage to Defendants, or any of them, with respect to any defense fees and costs incurred in connection with the Thacker Arbitration Demand, or with respect to any award entered or settlement reached in connection with the Thacker Arbitration Demand.

## SIXTH CAUSE OF ACTION

(For Declaratory Relief with Respect to Coverage of the California Actions)

111.    Twin City hereby incorporates and re-alleges the allegations in Paragraphs 1-110 as if fully set forth herein.

112.    There exists a genuine and bona fide dispute, and an actual controversy and disagreement between Twin City, on the one hand, and Defendants, on the other hand, about whether Twin City has a duty to provide coverage in connection with the California Actions.

113.    Twin City contends that coverage for the California Actions is excluded under the Twin City Excess Policies based on the Insured v. Insured Exclusion in the HCC Primary Policy, to which the Twin City Excess Policies follow form.

114.    Defendants, or certain of them, contend that coverage is available for the California Actions under the Twin City Excess Policies.

115.    Twin City requests a judicial declaration that it is not obligated to provide coverage to Defendants, or any of them, with respect to any defense fees and costs incurred in the California Actions, or with respect to any judgment entered or settlement reached in the California Actions.

## SEVENTH CAUSE OF ACTION

(For Declaratory Relief with Respect to Coverage of the Presser Action)

116.    Twin City hereby incorporates and re-alleges the allegations in Paragraphs 1-115 as if fully set forth herein.

**TWIN CITY FIRE INS. CO.'S COMPL. FOR DECLARATORY RELIEF**

117.   There exists a genuine and bona fide dispute, and an actual controversy and disagreement between Twin City, on the one hand, and Defendants, on the other hand, about whether Twin City has a duty to provide coverage in connection with the Presser Action.

118.   Twin City contends that coverage for the Presser Action is excluded under the Twin City Excess Policies based on the Insured v. Insured Exclusion in the HCC Primary Policy, to which the Twin City Excess Policies follow form.

119.   Defendants, or certain of them, contend that coverage is available for the Presser Action under the Twin City Excess Policies.

120.   Twin City requests a judicial declaration that it is not obligated to provide coverage to Defendants, or any of them, with respect to any defense fees and costs incurred in connection with the Presser Action, or with respect to any settlement reached in connection with the Presser Action.

### EIGHTH CAUSE OF ACTION

(For Declaratory Relief with Respect to Coverage of the Texas Action)

121.   Twin City hereby incorporates and re-alleges the allegations in Paragraphs 1-120 as if fully set forth herein.

122.   There exists a genuine and bona fide dispute, and an actual controversy and disagreement between Twin City, on the one hand, and Defendants, on the other hand, about whether Twin City has a duty to provide coverage in connection with the Texas Action.

123.   Twin City contends that coverage for the Texas Action is excluded under the Twin City Excess Policies based on the Insured v. Insured Exclusion in the HCC Primary Policy, to which the Twin City Excess Policies follow form.

124.   Defendants, or certain of them, contend that coverage is available for the Texas Action under the Twin City Excess Policies.

125.   Twin City requests a judicial declaration that it is not obligated to provide coverage to Defendants, or any of them, with respect to any defense fees and costs incurred in the Texas Action, or with respect to any judgment entered or settlement reached in the Texas Action.

**TWIN CITY FIRE INS. CO.'S COMPL. FOR DECLARATORY RELIEF**

**NINTH CAUSE OF ACTION**

(For Declaratory Relief with Respect to Coverage of the Illinois Action)

126.    Twin City hereby incorporates and re-alleges the allegations in Paragraphs 1-125 as if fully set forth herein.

127.    There exists a genuine and bona fide dispute, and an actual controversy and disagreement between Twin City, on the one hand, and Defendants, on the other hand, about whether Twin City has a duty to provide coverage in connection with the Illinois Action.

128.    Twin City contends that coverage for the Illinois Action is excluded under the Twin City Excess Policies based on the Insured v. Insured Exclusion in the HCC Primary Policy, to which the Twin City Excess Policies follow form.

129.    Defendants, or certain of them, contend that coverage is available for the Illinois Action under the Twin City Excess Policies.

130.    Twin City requests a judicial declaration that it is not obligated to provide coverage to Defendants, or any of them, with respect to any defense fees and costs incurred in the Illinois Action, or with respect to any judgment entered or settlement reached in the Illinois Action.

**TENTH CAUSE OF ACTION**

(For Declaratory Relief with Respect to Coverage of the Meyer Action)

131.    Twin City hereby incorporates and re-alleges the allegations in Paragraphs 1-130 as if fully set forth herein.

132.    There exists a genuine and bona fide dispute, and an actual controversy and disagreement between Twin City, on the one hand, and Defendants, on the other hand, about whether Twin City has a duty to provide coverage in connection with the Meyer Action.

133.    Twin City contends that coverage for the Meyer Action is excluded under the Twin City Excess Policies based on the Insured v. Insured Exclusion in the HCC Primary Policy, to which the Twin City Excess Policies follow form.

134.    Defendants, or certain of them, contend that coverage is available for the Meyer Action under the Twin City Excess Policies.

**TWIN CITY FIRE INS. CO.'S COMPL. FOR DECLARATORY RELIEF**

135.    Twin City requests a judicial declaration that it is not obligated to provide coverage to Defendants, or any of them, with respect to any defense fees and costs incurred in the Meyer Action, or with respect to any judgment entered or settlement reached in the Meyer Action.

**ELEVENTH CAUSE OF ACTION**

(For Declaratory Relief with Respect to Disgorgement of Profits)

136.    Twin City hereby incorporates and re-alleges the allegations in Paragraphs 1-135 as if fully set forth herein.

137.    ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

138.    ███████████████████████████████████████████

139.    ██████████████████████████████████

140.    █████████████████████████████████████████████████████████████████████████████████

**TWELFTH CAUSE OF ACTION**

(For Declaratory Relief with Respect to Allocation)

141.    Twin City hereby incorporates and re-alleges the allegations in Paragraphs 1-140 as if fully set forth herein.

142.    There exists a genuine and bona fide dispute, and an actual controversy and disagreement between Twin City, on the one hand, and Defendants, on the other hand, about whether any **Loss** (as that term is defined by the HCC Primary Policy, to which the Twin City Excess Policies follow form) incurred in connection with the Fox Claims, including but not

**TWIN CITY FIRE INS. CO.'S COMPL. FOR DECLARATORY RELIEF**

limited to the Settlement and defense fees and expenses, should be allocated between covered **Loss** and uncovered **Loss**.

143.   Twin City contends that to the extent coverage otherwise exists for the Fox Claims, or any of them, Twin City is obligated to pay only for covered **Loss**, pursuant to the terms of the HCC Primary Policy, to which the Twin City Excess Policies follow form, and pursuant to *Buss v. Superior Court*, 16 Cal. 4th 35 (1997) and *Blue Ridge Insurance Company v. Jacobsen,* 25 Cal. 4th 489 (2001).

144.   Defendants, or certain of them, dispute that the Settlement or defense fees and expenses incurred in connection with the Fox Claims, or any of them, include any uncovered **Loss**, and/or further dispute that Twin City is entitled to an allocation between any uncovered **Loss** and covered **Loss**.

145.   To the extent the court determines that coverage is owed for the Fox Claims, or any of them, Twin City requests a judicial declaration allocating the Settlement and defense fees and expenses incurred in connection with the Fox Claims between covered **Loss** and uncovered **Loss**.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff Twin City prays for judgment against defendants as follows:

(1)   For a judicial declaration that Twin City has no obligation to pay any judgment or settlement awarded against Defendants, or any defense expenses incurred by defendants in connection with the *Fox v. Paine* Litigation;

(2)   For a judicial declaration that even if coverage is otherwise available for the *Fox v. Paine* Litigation under the Twin City Excess Policies, Twin City has no obligation to reimburse Defendants, or any of them, for defense expenses incurred in the *Fox v. Paine* Litigation from January 31, 2008 to July 7, 2009;

(3)   For a judicial declaration that even if coverage is otherwise available for the *Fox v. Paine* Litigation under the Twin City Excess Policies, Twin City has no obligation to reimburse Defendants, or any of them, for legal fees and expenses  incurred in connection with

**TWIN CITY FIRE INS. CO.'S COMPL. FOR DECLARATORY RELIEF**

the pursuit of any affirmative claims asserted in the *Fox v. Paine* Litigation, including but not limited to any motion(s) to enforce the *Fox v. Paine* Settlement Agreement;

(4)   For a judicial declaration that Twin City has no obligation to pay any award against Defendants, or any defense expenses incurred by Defendants in connection with the Ghisletta Arbitration Demand;

(5)   For a judicial declaration that Twin City has no obligation to pay any award against Defendants, or any defense expenses incurred by Defendants in connection with the Thacker Arbitration Demand;

(6)   For a judicial declaration that Twin City has no obligation to pay any judgment or settlement awarded against Defendants, or any defense expenses incurred by Defendants in connection with the California Actions;

(7)   For a judicial declaration that Twin City has no obligation to pay any judgment or settlement awarded against Defendants, or any defense expenses incurred by Defendants in connection with the Texas Action;

(8)   For a judicial declaration that Twin City has no obligation to pay any judgment or settlement awarded against Defendants, or any defense expenses incurred by Defendants in connection with the Illinois Action;

(9)   For a judicial declaration that Twin City has no obligation to pay any judgment or settlement awarded against Defendants, or any defense expenses incurred by Defendants in connection with the Meyer Action;

(10)   For a judicial declaration that Twin City has no obligation to pay any judgment or settlement awarded against Defendants, or any defense expenses incurred by Defendants in connection with the Presser Action;

(11)   ███████████████████████████████████████████████████████████████████████

28

**TWIN CITY FIRE INS. CO.'S COMPL. FOR DECLARATORY RELIEF**

(12)    For a judicial declaration allocating covered **Loss** and uncovered **Loss** for the Settlement and any and all defense expenses incurred in connection with the Fox Claims, in accordance with California law and the terms of the Twin City Excess Policies;

(13)    For costs of suit incurred herein; and

(14)    For such other and further relief as this Court deems just and proper.


Dated: June 24, 2013                          TRESSLER LLP



                                          By:   /s/ Elizabeth L. Musser
                                                David Simantob
                                                Elizabeth L. Musser
                                                Attorneys for Plaintiff
                                                TWIN CITY FIRE INSURANCE COMPANY

LA#128678 (8877-80)

**TWIN CITY FIRE INS. CO.'S COMPL. FOR DECLARATORY RELIEF**